## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| MARIA ISABELLA DELGADILLO, | ) | |
|---|---|---|
| Plaintiff, | ) | Case No. 11 CV 7342 |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF CICERO, GEORGE GREGORY, | ) | |
| MARK STEINHAGEN, TED KOLIN, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS TOWN AND GREGORY'S FED. R. CIV. P. 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW AS TO ALL COUNTS[1]

NOW COME Defendants TOWN OF CICERO and GEORGE GREGORY, by and through their attorney, Cynthia S. Grandfield, K. Austin Zimmer and Veronica Bonilla-Lopez of Del Galdo Law Group, LLC., and in support of their Motion state as follows:

### I.  NATURE OF THE CASE AND LEGAL STANDARD

Defendants Town and Gregory are entitled to a directed verdict as a matter of law with respect to all Counts based on the failure of DelGadillo to present evidence that would provide a legally sufficient basis for a reasonable jury to find in her favor. See Fed. R. Civ. P. 50(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).DelGadillo currently has pending claims of intentional discrimination with respect to race and gender against all Defendants, hostile work environment with respect to race and gender against Kolin, Steinhagen, and the Town, and IIED claims against Kolin and Steinhagen. The only claims that have survived summary judgment against George Gregory are DelGadillo's claims of intentional employment discrimination based on gender, race and national origin under the Equal Protection Clause and Section 1981 pursuant to Section 1983. See Ord. and Op. (Dkt. No. 189).

With respect to the intentional discrimination claims, DelGadillo has failed to present any evidence of an adverse employment action separate and apart from her hostile work environment. The only other possible action that DelGadillo could contend was an adverse employment action is

---

[1] To the extent that any arguments made by Defendants Kolin and Steinhagen are applicable to Defendants Town and Gregory, they are adopted and incorporated as if fully stated herein.

a change in duties, which is not sufficiently adverse. Further, any alleged adverse employment action lacks discriminatory animus and is barred by the statute of limitations. With respect to the Town, even if the Court were to hold a reasonable jury could find an underlying constitutional violation, DelGadillo has failed to present sufficient *Monell* evidence for liability. With respect to Gregory, even if the Court were to hold an underlying constitutional violation there has been insufficient evidence to give the question of punitive damages to the jury.

With respect to any claims of front pay, back pay, or lost wages, DelGadillo has offered no evidence sufficient to put the question to the jury, as DelGadillo has not pled constructive discharge. This has caused Defendants substantial prejudice. Even if she had alleged constructive discharge, there is a total lack of evidentiary support for this theory.

With respect to her hostile work environment claims, DelGadillo has failed to meet her *Monell* requirement with respect to the Town. Further, DelGadillo has failed to allege sufficient conduct with respect to race to rise to the level of a hostile work environment.

## II. ARGUMENT
### A. Intentional Race/Gender Discrimination Claims Separate from Hostile Work Environment Claims

Counts I and II of DelGadillo's Complaint allege disparate treatment amounting to an equal protection violation under § 1983, and discrimination on the basis of race and national origin under § 1981[2]. As such, they rely as a predicate on DelGadillo showing she suffered intentional, materially adverse employment action by the Town through Gregory. Here, the evidence did not support such a conclusion.

#### 1. No adverse employment action has been shown

An employee can support an adverse employment action made for discriminatory reasons by "directly show[ing] that [racial/gender] discrimination motivated the employment decision, or, as is more common, [by relying] on the indirect burden-shifting method." *Sublett v. John Wiley & Sons*, 463 F.3d 731, 736-37 (7th Cir. 2006). Whether a plaintiff proceeds by direct or indirect method in proving discrimination, the plaintiff must show a materially adverse employment action. *Phelan v.*

---
[2] Brought pursuant to § 1983, per the Court's summary judgment ruling. [Dkt. 189]

2

*Cook County*, 463 F.3d 773, 780 (7th Cir. 2006). At the outset, Plaintiff failed to present evidence that establishes she suffered an adverse employment action. An adverse employment action is a significant change in employment status. *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). The idea behind the requirement of proof of an adverse action "is simply that a statute that forbids employment discrimination is not intended to reach every bigoted act or gesture that a worker might experience in the workplace. *Phelan*, 463 F.3d at 780 citing *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 653 (7th Cir. 2000). An adverse employment action can be termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits. *Moser v. Indiana Department of Corrections*, 406 F.3d 895, 904 (7th Cir. 2005). Adverse actions are typically economic injuries and result in tangible job consequences. *Whittaker v. Northern Illinois Univ.*, 424 F.3d 640, 647-648 (7th Cir. 2005).

Here, DelGadillo attempts to demonstrate an adverse action by claiming that her job responsibilities were taken away by Michael Piekarski and given to Olivia Pierkarski (previously Olivia Munoz). Significantly diminished material responsibilities may be considered an adverse action. *Moser*, 406 F.3d at 904. However, the action must involve more than a mere inconvenience or an alteration of job responsibilities. *Maclin v. SBC Ameritech*, 520 F.3d 781, 787 (7th Cir. 2008). To be exact, the Seventh Circuit has emphasized that an adverse action must "be 'significant' to be cognizable as discrimination." *Id.* Plaintiff has failed to present any evidence whatsoever to support that in fact material responsibilities and assignments were taken away. Plaintiff herself testified that her main job duties were to answer the phone and greet the public:

> Q. All right. This is at the time when Olivia Munez, according to you, was taking all of your job duties, wasn't it?
> A. Mike gave her my duties, but I wasn't afraid of losing my job. I still had my main job, which was answering the phone and dealing with the public, so I wasn't afraid of that.
> Tr. Vol. 3B, p. 357

In *Maclin v. SBC Ameritech*, the employee sued her employer claiming she was demoted on the basis of disability, race and gender discrimination. 520 F.3d 781, 786 (7th Cir. 2008). In analyzing the plaintiff's race and discrimination claims, the Seventh Circuit noted that a transfer involving no reduction in pay and no more than a minor change in working conditions does not qualify as an

3

adverse employment action. *Id.* Regarding the change in title, the Court stated that an adverse employment action must involve a material, substantive change in an employee's pay and responsibilities. *Id.* at 789. "An employee has not suffered an adverse employment action if her title changes but her position remains the same in terms of responsibilities, salary, benefits and opportunities for promotion. Even a change in title that deprives an employee of prestige is insufficient if it lacks more substantive effect." *Id.*

In the case at hand, Plaintiff remained in a clerical position throughout the time she was employed at the Fire Department. She was hired as a clerk with clerical duties including as a receptionist and remained in that capacity. Joint ("Jt.") Exhibit 4. As in *Maclin*, Plaintiff has utterly failed to establish that any alleged change in duties, "had any significant or material effect on her job or opportunities for advancement." See also *Mercer v. Cook County, Illinois*, 527 Fed.Appx 515, 522-523 (12-2894 7th Cir. 2013)(in gender discrimination action, the plaintiff failed to establish reassignment to prior division constituted an adverse employment action where reassignment was not attended by any loss of salary or benefits and no evidence of substantially changed working conditions).

**2. Even if adverse employment action, there is insufficient evidentiary support to demonstrate discriminatory intent.**

Even if DelGadillo could establish that there was a material reduction in her job responsibilities, the allegation falls short of establishing the requisite discriminatory intent. A plaintiff must demonstrate that the individual defendant acted (or failed to act) because of the plaintiff's protected class. See *Nabozny v. Podlesny,* 92 F.3d 446, 453 (7th Cir.1996). The plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Plaintiff must present direct evidence of discriminatory intent such as an admission or enough circumstantial evidence to allow a rational jury to infer that discriminatory intent motivated the employment action. *Burnell v. Gates Rubber Co.*, 647 F.3d 704, 708 (7th Cir. 2011). Circumstantial evidence may include suspicious timing; ambiguous statements; and behavior or comments directed at others in the protected class. *Id.*

4

DelGadillo has not pointed to any admissions by Gregory or the Town that prove discrimination. Moreover, DelGadillo has failed to otherwise establish any connection between any supposed discriminatory statements and an adverse employment action. In other words, DelGadillo cannot establish race had anything to do with a change in her job responsibilities. Further, any animus towards her gender ultimately relate to her lack of skill. To be exact, DelGadillo contends Mike Piekarski took her duties away but comments made by him to DelGadillo were not racial. Instead, DelGadillo testified Mike Piekarski told her one time in 2008 or 2009, after reviewing a letter DelGadillo drafted, that she was a stupid woman. Tr. Vol. 2A pps. 122-124. DelGadillo also testified that on another day, before this incident, Mike Piekarski threw his jacket at her and told her, "wash this, hang it up, that's all woman are good for." *Id.* at p. 127. While her gender was mentioned, DelGadillo's testimony demonstrates that it was ultimately her incompetence that caused any change in her duties:

> Q. Now, up to that point, had he [Mike Piekarski] told you that you couldn't do the rest of your job?
> A. At that point, they -- his wife started working there.They took away all my duties. And the only -- because they said I was stupid and didn't know how to do nothing and didn't know how to do any single thing. So only thing I could do, because I was stupid woman, to answer the phone. So that's all I did when his wife started working there.
> Transcript Vol. 2A, p. 124.

DelGadillo also claims Gregory made a reference to "your people" after returning from vacation but DelGadillo does not allege Gregory took her duties away. DelGadillo testified:

> Q. Ms. DelGadillo, George Gregory became the fire marshal in 2007, correct?
> A. Yes.
> Q. And he didn't take any of your work duties away?
> A. Not Mr. Gregory, no.
> Tr. Vol. 5B, p. 775.
> Q. And so what was your job duties at the time that Chlada retired and Mr. Gregory took over the fire department? Had your job duties changed at that point?
> A. No.
> Q. Okay. Now, when Mr. Gregory was first promoted to the position of Fire Marshal in 2007, did he become your immediate supervisor?
> A. Yes.
> Q. And so what was your job duties at the time that Chlada retired and Mr. Gregory took over the fire department? Had your job duties changed at that point?
> A. No.
> Q. Okay. So at the time that Mr. Gregory took over, what were your job duties at that time?
> A. The same...
> Tr. Vol. 2A, p. 96

5

Discriminatory intent is additionally refuted by the evidence in this case. "Discriminatory purpose implies more than intent as volition or intent as awareness of consequences. It implies that a decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing adverse effects on the identifiable group." *Deerwester v. Isham,* No. 94 C 1186, 1999 WL 160255 (N.D.Ill., March 9, 1999). Olivia Piekarski was allegedly given DelGadillo's duties. Mike Piekarski could not be deemed to have chosen the course of action "in part for the purpose" of adversely affecting Hispanic/Mexican women where Olivia herself is female, Hispanic and of Mexican descent. Clearly this is not discriminatory in nature.

**3. Further, the claims are barred by the statute of limitations.**

Regardless, DelGadillo's alleged reduction in job duties is barred by the statute of limitations applicable to intentional employment discrimination claims. The statutes of limitations for claims under Sections 1983 and 1981 are borrowed from the forum state's statute of limitations for personal injury actions. *Jones v. R.R. Donnelley & Sons Co.,* 305 F.3d 717, 728 (7th Cir.2002) (section 1981); *Mitchell v. Donchin,* 286 F.3d 447, 450 n. 1 (7th Cir.2002) (section 1983). Thus, in Illinois, the statute of limitations is two years. *Jones,* 305 F.3d at 728; *Mitchell,* 286 F.3d at 450 n. 1. The limitations periods, while guaranteeing the protection of those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past. *Johnson* v. *Railway Express Agency, Inc.,* 421 U. S. 454, 463-464 (1975). DelGadillo filed her Complaint on October 17, 2011. Mike Piekarski was hired in 2005 and Olivia was hired in 2007. Thus, where both of these dates significantly pre-date 2009, any claims that DelGadillo's duties were removed from her and given to Olivia are barred by the two-year statute of limitations.

**4. With respect to the Town, DelGadillo cannot satisfy *Monell* with respect to these claims.**

DelGadillo also cannot establish Monell for her intentional employment discrimination claims. For all the reasons outlined above there is no underlying constitutional violation and thus there can be no *Monell* liability. *McLaughlin v. Casler*, 634 F. Supp.2d 88, 897 (N.D. IL., 2009)(where the court determined as a matter of law that the plaintiff failed to show an underlying constitutional deprivation, the plaintiff could not prevail on a *Monell* claim). Furthermore,

6

to successfully plead a cause of action under §1983 against a municipality such as the Town, a plaintiff must allege: (a) unconstitutional conduct perpetrated by a municipal employee; (b) that the unconstitutional conduct was the result of the municipality's existing policy or customs; and (c) that a causal link exists between the unconstitutional action and the plaintiff's injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978). In other words, it is when the execution of a government's policy inflicts the injury that the entity is responsible under §1983. *Woodward v. Correctional Med. Serv. of Illinois, Inc.*, 386 F.3d 917, 927 (7th Cir. 2004). Specifically, a plaintiff must show that her constitutional rights were violated and that a "custom, policy, or practice" of the defendant municipality directly caused the violation. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658 (1978). A custom, policy, or practice may be demonstrated through: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *Id.* Moreover, *respondeat superior* will not suffice to impose §1983 liability on a municipality. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995).

DelGadillo has not demonstrated an express policy that caused her injury. To the contrary the Town has an express policy that prohibits discrimination. See Defendant's Exhibit 19. DelGadillo also cannot attempt to re-allege that Gregory as Fire Marshall was a final policymaker. The law of this case forbids this assertion. This Court determined in its ruling on Defendants' joint motion for summary judgment that Plaintiff failed to produce "evidence showing that there is a genuine dispute of material fact as to whether Gregory is a final policymaker." See Op. and Order p. 12-13 (Dkt. No. 189). Thus, DelGadillo is limited to establishing *Monell* by way of evidence of a widespread policy or practice. The evidence in this case fails to prove a widespread policy or practice. DelGadillo allegedly had her duties taken away by one person and there is no evidence that any other person, other than DelGadillo, had duties taken away from them as well.

7

### 5. No punitive damages are warranted against Gregory.

Finally, even were any of DelGadillo's claims sufficient, there is no basis whatsoever to submit to the jury any potential punitive damages award against Gregory. A jury may award punitive damages in a 42 U.S.C. § 1983 claim if it finds "conduct motivated by evil intent or involving reckless or callous indifference to the federally-protected rights of others." *Erwin v. Cty. of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir. 1989). A plaintiff may satisfy this standard by establishing that "defendant actually derive[d] satisfaction from hurting the plaintiff," or, "while not having any particular desire to hurt the plaintiff, trample[d] on the plaintiff's rights in a fashion that can fairly be called reckless, to accomplish his own aims." *Soderbeck v. Burnett Cty., Wis.*, 752 F.2d 285, 289 (7th Cir. 1985). In the context of punitive damages under § 1983, there is a distinction between deliberate misconduct and reckless misconduct. *Id.* at 290.

Here, DelGadillo presented absolutely no evidence that any even conceivably culpable act of Gregory's could fall into the former category, expressly disclaiming any personal harassment by Gregory and acknowledging his efforts to advise her. If any oversight in Gregory's leadership of the Town's fire department ever existed at all, it certainly was not "motivated by evil intent or involving reckless or callous indifference to the federally-protected rights of others." *Erwin*, 872 F.2d at 1299. Accordingly, the Court should enter a directed finding with respect to DelGadillo's claim for punitive damages as to Gregory.

### B. DelGadillo is not entitled to any back pay, front pay, or lost wages damages as a matter of law with respect to any of her employment claims for failure to plead constructive discharge.

DelGadillo is claiming back pay, front pay, or lost wages damages in the jury instructions. However, DelGadillo has not pled constructive discharge in either her intentional or hostile work environment claims – thus she cannot contend she is entitled to any amount in this category of damages. See Hertzberg v. SRAM Corp., 261 F.3d 651, 659-660 (7th Cir. 2001)(holding that failure to allege constructive discharge disallows any claim for back pay/front pay, no matter how egregious the harassment is). To allow DelGadillo to amend her complaint at this stage would be highly prejudicial to Defendants and in violation of the Federal Rules of Civil Procedure. See Fed. R. Civ.

8

P. 15(a), (d). While leave to amend is to be freely given when justice so requires, it is "inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." Perrian v. Grady, 958 F.2d 192, 194 (7th Cir. 1992)(denial of motion to amend close to trial upheld); See also Soltys v. Costello, 520 F.3d 737 (7th Cir. 2008)(denial of motion to amend complaint to add plea of punitive damages two weeks before trial not abuse of discretion); Campbell v. Ingersoll Milling Mach. Co., 893 F.2d 925, 927 (7th Cir. 1990)(found motion to amend three weeks before trial burdensome where eleventh hour additions … [are] bound to produce delays that burden not only the parties to the litigation but also the judicial system and other litigants). Because of DelGadillo's delay, Defendants have not had the opportunity to engage in summary judgment motion practice on whether the conversion of DelGadillo's paid leave after nearly four years to unpaid leave constitutes constructive discharge plead an affirmative defense of failure to mitigate or conduct discovery on failure to mitigate. See, e.g., Dkt. No. 80 (closing fact discovery as of 05/27/2013); See also Motion to Bar Foster and Bank based on failure to seasonably supplement additional treating records (Defendants further state that it was not until their additional depositions on 02/25-02/26 that these treaters opined that DelGadillo could not work at all).

Even so, Plaintiff was not constructively discharged. The only plausible adverse action that DelGadillo could possibly contend led to constructive discharge was the alleged hostile work environment. Meeting the criteria for a hostile work environment alone, however, is insufficient to make out a claim for constructive discharge in accordance with Supreme Court and Seventh Circuit case law. As the Supreme Court has stated in Pennsylvania State Police v. Suders, 542 U.S. 129, 146-147 (2004), "A hostile work environment constructive discharge claim entails something more: a plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." (*citing to* Breeding v. Arthur J. Gallagher & Co., 1164 F.3d 1151, 1160 (8th Cir.

1999)("[A]lthough there may be evidence from which a jury could find sexual harassment…facts alleged [for constructive discharge must be] …so intolerable that a reasonable person would be forced to quit."); Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1015 (7th Cir. 1997)("[U]nless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress."). To be certain, the circumstances that a constructive discharge has been found have been severe. See Taylor v. W&S Life Ins. Co., 966 F.2d 1188, 1191, 1198-99 (7th Cir. 1992)(finding constructive discharge where harassment included a supervisor brandishing a pistol and holding it to the plaintiff's head); Brooms v. Regal Tube Co., 881 F.2d 412, 417, 423 (7th Cir. 1989)(finding constructive discharge where severe harassment culminated with a co-worker grabbing the plaintiff and threatening to kill her).

While DelGadillo has focused from opening statements to the testimony of her treaters on the idea that she is an "egg-shell plaintiff." However, the use of the word "reasonable" in the constructive discharge standard denotes that the standard is an objective one. In similar cases involving an alleged constructive discharge within a hostile work environment the Seventh Circuit has held that one does not exist. In Tutman v. WBBM-TV, Inc./CBS, Inc., 209 F.3d 1044, 1048, 1051 (7th Cir. 2001), the Seventh Circuit held that the employer's transfer of the primary harassers and mandate that they attend sensitivity training defeated a claim for constructive discharge. Similarly, in McPherson v. City of Waukegan, 379 F.3d 430, 440-441 (7th Cir. 2004), the harasser being placed on suspension pending the investigation as well as McPherson being placed on paid leave and repeatedly being sent encouraging letters to come back to work defeated any claim for constructive discharge. In McPherson, the Court also found it particularly instructive that McPherson did not feel compelled to resign until several months later – when the hostile working conditions were long gone.

In DelGadillo's case, she first complained to the Inspector General in February of 2010, but failed to name any specific firefighters. See Joint Exhibit 17, 02/23/2010 entry. In March and April of 2010, the Inspector General attempted to get specifics as to who was harassing her

10

but she refused to name names.  See Joint Exhibit 17, 03/16/2010, 04/14/2010 entries.  Even so, the Town still ordered all firefighters to attend sensitivity training in May of 2010.  See Attachment A to FPTO Stipulated Fact No. 19.  When DelGadillo finally named names in October of 2010, her primary harassers, Kolin and Steinhagen were immediately transferred to separate buildings and ordered to cease and desist from any harassing conduct.  See Joint Exhibit No. 17, 10/12-25/2010 entries; See also Joint Exhibit 5-6; See also Attachment A of Stipulated Facts Nos. 24-25.  Further, DelGadillo was placed on paid leave in October of 2010 – which she remained on until February of 2014 despite the fact that she did not provide a doctor or therapist note justifying the leave from September of 2011 onward.  See Attachment A of Stipulated Facts Nos. 23, 30-32; Trial Volume 6A, 907-908, 932-933.  And when she was finally asked to come off paid leave, she was transferred to the Civilian Records Department of the Police Department in an effort to make the environment more conducive for her to return.  See Trial Volume 8B, 1650-1651.  Further, still neither Steinhagen nor Kolin had worked at the Fire Department for nearly two years at the point she was asked to return. See, e.g., Trial Volume 6B, 1024.   Yet, despite all of that and the fact that she has failed to return to work, a position remains open to her, she has not resigned, and she has not been terminated.  This simply does not even remotely meet the objective criteria for a constructive discharge.

  Any claims for back pay, front pay, or lost wages are barred as a matter of law.
  **C. DelGadillo's hostile work environment claims against the Town of Cicero fail as a matter of law.**
  **1. DelGadillo has failed to make out a *Monell* claim with respect to hostile work environment.**

Plaintiff failed to file either a Charge of Discrimination or a Charge of Sexual or Racial Harassment with the Equal Employment Opportunity Commission (EEOC); as such, Plaintiff waived her right to file suit against her employer, the Town of Cicero, under Title VII of the Civil Rights Act of 1964, *42 U.S.C. §2000 et. seq.*  Like her employment discrimination allegations, Plaintiff brings her harassment claims against the Town of Cicero pursuant to §1983 and §1981.

The Town of Cicero, as a municipal entity, cannot be held vicariously liable for the acts of

11

their employees. *Monell,* 436 U.S. 658. There is no express unconstitutional policy, see Defendant's Exhibit 19 which prohibits harassment, and DelGadillo cannot claim a constitutional injury that was caused by a person with final policymaking authority. See Op. and Order p. 12-13 (Dkt. No. 189)(Not enough evidence that Gregory is final policymaker). As discussed in section (A.) above, DelGadillo is limited to establishing *Monell* by way of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.

Plaintiff cannot establish the "prototypical situation of a widespread practice argument," which requires her to establish that the supposed policy affected "many different individuals," because she presents absolutely no evidence that anyone else within her protected class suffered any harassment or discrimination. *Phelan,* 463 F. 3d at 789. Instead, Plaintiff apparently attempts to demonstrate that the actions directed at her alone evince such "widespread practice." *Id.*

Plaintiff *must* introduce evidence demonstrating that "the unlawful practice was so pervasive." *Phelan,* 463 F. 3d at 790. At the outset, there is no evidence of a widespread practice of racial harassment. The single statement, "you people" made by Gregory and the statement made by firefighters about a Mexican driver, not directed at DelGadillo, significantly fail to establish pervasive conduct. In regards to the alleged sexual harassment, however, DelGadillo must establish a true municipal policy and not a random event. *Calhoun v. Ramsey,* 408 F.3d 375, 380 (7th Cir. 2005). "The word 'widespread' must be taken seriously;" "it is not enough to demonstrate that policymakers could, or even should, have been aware of the unlawful activity because it occurred more than once." *Phelan,* 463 F. 3d at 790. The 7th Circuit previously declined to find such an alleged "widespread practice" evinced a true "municipal policy" even where the plaintiff introduced evidence that multiple municipal employees subjected her to sexual harassment because she failed to weave theses separate incidents together into a "cognizable policy." *Id.* Such incidents were "insufficient to conclude that the practice of ignoring sexual harassment had the 'permanent and well-settled' quality required by precedents." *Id.*

Moreover, under this theory, Plaintiff must show a conscious failure of her employer to

protect her from abusive conditions created by fellow employees to establish intentional discrimination. Equal protection jurisprudence requires proving such "intent to discriminate." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57 (1986). Therefore, even if co-worker employees' behavior qualifies as "actionable," an employer discharges any legal duty if the employer takes all reasonable steps to protect the plaintiff. *Baskerville,* 50 F.3d at 431. Thus, because the Town of Cicero thoroughly investigated Plaintiff's claims of harassment, DelGadillo cannot establish that the Town of Cicero ratified or acquiesced in any allegedly discriminatory behavior. *See Salvadori,* 293 F.3d 989 ("holding plaintiff's §1983 Equal Protection Claim alleging her employer acquiesced or ratified racial harassment failed because the employer investigated plaintiff's claims.) Finally, DelGadillo, as a plaintiff alleging that harassment violated her Equal Protection right, "must reasonably take advantage of any preventative or corrective opportunities that an employer provides." *Id.* at 989.

Plaintiff first contacted Inspector Klosak with her complaints on February 23, 2010. Inspector Klosak immediately began investigating her allegations; however, she thereafter recanted all allegations on March 16, 2010. During her March 16, 2010 interview, Plaintiff also told Inspector General Klosak that she liked her work environment that nothing needed to be done to correct any deficiency in her work environment, to improve her job position, to make her happier, more productive, or safer in the workplace. She further told him that she did not want him to take any action on her behalf. Plaintiff's Exhibit 76A, 76B. After her initial vague allegations against unnamed firefighters in February 2010, DelGadillo failed to bring forth any substantive allegations of harassment until five months later, after a nervous breakdown.

> Q After February of 2010 you knew James Klosak was the inspector general?
> A Yes.
> Q And from May of 2010 you didn't come forward with any other allegations to Inspector Klosak?
> A Like I just told you, ma'am, with all due respect, I didn't want to tell on anybody. I just wanted to go to work in peace and not being -- and be left alone, not bothered sexually.
> Q So is that a yes?
> A Or degraded as a woman.
> Q Is that a yes, you did not go to Inspector Klosak from May through October of 2010?
> A Yes, I didn't go because I was afraid.
> Tr. 5B, pps. 788-789

13

Moreover, in October 2010, when DelGadillo alleged specific conduct against Kolin and Steinhagen, they were transferred and other firefighters were interviewed. See Joint Exhibit 17; Investigative chronology. Starting October 2010 and for three years thereafter, DelGadillo was also placed on paid leave. In sum, as the 7th Circuit determined in *Phelan v. Cook County,* because the Town of Cicero employed a strict written policy intolerant of sexual harassment/racial discrimination and sufficiently responded to Plaintiff's complaints, Plaintiff cannot establish liability against the Town of Cicero under a widespread practice theory.

**2. Insufficient Evidence for a Racial Hostile Work Environment Claim for Failure to Meet Objective Severe and Pervasive Standard as a Matter of Law.**

A "hostile" work environment is one that is "permeated with discriminatory intimidation, ridicule and insult that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." Shanoff v. Ill. Dept. of Hum. Serv., 258 F.3d 696, 704 (7th Cir. 2001). The issue of whether the work environment is hostile "turns on whether the alleged harassment occurred because of the [race] of the complainant." Haugerud v. Amery Sch. Dist., 259 F.3d 678, 692 (7th Cir. 2001). She must also show, objectively, that a reasonable person in her position also would have perceived it to be hostile. Haugerud, 259 F.3d at 693. In order to determine whether the work environment is objectively hostile, the totality of the circumstances is considered including "the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, or a mere offensive utterance and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). The Court asks whether the incidents, considered cumulatively, would constitute sufficient evidence for a jury to infer race harassment. Silk v. City of Chicago, 194 F.3d 788, 807-808 (7th Cir. 1999); Sweeney v. West, 149 F.3d 550, 556-557 (7th Cir. 1998); Galloway v. General Motors Service Parts Operations, 78 F.3d 1164, 1166 (7th Cir. 1996).

Throughout the course of this litigation and as the evidence at trial played out, it is clear that the primary focus of DelGadillo's case has been on sexual harassment and/or gender discrimination. Racial harassment and/or discrimination has been pled and proved as somewhat of an afterthought. As argued in section II, C., 1. of this brief, the only incidents related to racial harassment DelGadillo

14

has submitted at trial is an isolated incident of Gregory referring to Mexicans as "you people" and one incident of someone calling her a "stupid Mexican." This is in nearly five years of employment. This is simply not sufficient.

WHEREFORE, for the foregoing reasons, the Town and Gregory respectfully request that this Honorable Court enter judgment as a matter of law in their favor pursuant to Fed. R. Civ. P. 50(a), and for any and all such other relief as is equitable and just. In the alternative, with respect to the intentional discrimination claims separate from the hostile work environment claims, the Defendants request (1) that the Town be given judgment pursuant to Rule 50(a) for failure to sufficiently prove *Monell* allegations and (2) that Gregory be given judgment pursuant to Rule 50(a) with respect to punitive damages. In the alternative with respect to all employment discrimination claims, the Defendants request that judgment pursuant to Rule 50(a) be granted as a matter of law with respect to all back pay, front pay and lost wages claims for failure to plead constructive discharge. Lastly, in the alternative, should the Court determine that *Monell* has been sufficiently met to submit the hostile work environment claims to the jury that the Defendant that the Court grant judgment as a matter of law pursuant to Rule 50(a) with respect to the racial harassment claim.

Respectfully submitted,
Defendants TOWN OF CICERO and GEORGE GREGORY

By:     */s/ Cynthia S. Grandfield*
        *Attorney for the Town and Gregory*

K. Austin Zimmer
Veronica Bonilla-Lopez
Cynthia S. Grandfield (ARDC No. 6277559)
DEL GALDO LAW GROUP, LLC.
1441 S. Harlem Avenue
Berwyn, Illinois 60402
(708) 222.7000 (t) | (708) 222.7001 (f)