## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MARIA ISABELLA DELGADILLO, | ) | |
| Plaintiff, | ) | Case No. 11 CV 7342 |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF CICERO, GEORGE GREGORY, | ) | |
| MARK STEINHAGEN, TED KOLIN, JOHN DOE,) | |
| and JANE DOE, | ) | |
| Defendants. | ) | |

## DEFENDANT TED KOLIN'S FED. R. CIV. P. 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW AS TO ALL COUNTS OF PLAINTIFF'S COMPLAINT

NOW COMES Defendant TED KOLIN, by his attorney Brian Carey, and in support of

his Motion for Judgment as a Matter of Law pursuant to FRCP Rule 50(a) states:

## I.      LEGAL STANDARD

Directed verdicts are governed by Federal Rules of Civil Procedure 50 (a), "Judgment as

a Matter of Law" which states:

> (1) *In General.* If a party has been fully heard on an issue during a jury trial and
> the court finds that a reasonable jury would not have a legally sufficient
> evidentiary basis to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or
> defense that, under the controlling law, can be maintained or defeated only with a
> favorable finding on that issue.

Fed. R. Civ. P. 50(a)(a). The standard in deciding a motion for summary judgment under Fed. R.

Civ. P. 56 mirrors the standard in a motion for judgment as a matter of law; therefore, for a

motion made pursuant to Rule 50(a), "the trial judge must direct a verdict if, under the governing

law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 250 (1986).

## II.     ARGUMENT

The evidence presented at trial can lead the jury to only one conclusion – DelGadillo failed to prove her claims of intentional infliction of emotional distress and her claims of employment discrimination.

### A.  Kolin is entitled to judgment as a matter of law on the claim of intentional infliction of emotional distress.

"To properly plead a cause of action for intentional infliction of emotional distress, a plaintiff must allege facts to establish: (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant knew there was a high probability that his conduct would cause severe emotional distress; and (3) that the conduct in fact caused severe emotional distress." *Schroeder v RGIS, Inc.,* 2013 IL App 122483, 922 NE2d 509 (1st Dist., 2013).

At best, Plaintiff's claims as testified at trial are properly categorized as insults, indignities and annoyances at worst rather than extreme or outrageous conduct capable of satisfying the first element of an intentional infliction of emotional distress claim. Put another way, it is not beyond the bounds of decency, or unheard of in civilized society for some members in society to show bad taste in humor, lack of decorum, or even express libidinous interest in a disinterested peer.

"Mere insults, indignities, threats, annoyances, petty oppressions or trivialities'" do not constitute extreme and outrageous conduct. *Schroeder, supra;* (citing P*ublic Finance Corp. v. Davis*, 1976, 66 Ill2d 85, 89-90). "'Rather, the nature of the defendant's conduct must be so extreme so as to go beyond all possible bounds of decency, so as to be regarded as intolerable in a civilized community." Id., citing *Kolegas v Hefiel Broadcasting,* 154 Ill.2d 1, 21 (1992). Plaintiff's allegations do not amount to extreme or outrageous conduct.  At best, the alleged statements and conduct consist only of mere indignities and fail to rise to the level of conduct

necessary to establish this intentional tort. Additionally, Plaintiff presents no evidence to establish all the other elements of this cause of action; including, any knowledge by Defendants' of Plaintiff's probable emotional distress or actual causation.

Plaintiff's claims (i.e., asking her to come upstairs; comments on tight jeans;) do not rise to the level of extreme and outrageous conduct. Therefore, the intentional infliction of emotional distress claim should be dismissed. *See Owens v. Second Baptist Church,* 163 Ill. App. 3d 442 (1st Dist. 1987) (holding that the trial court erred in not entering a directed verdict in favor of Defendant on the claim of intentional inflection of emotional distress). *See also Schiller v. Mitchell,* 357 Ill. App. 3d 435 (holding that plaintiff's allegations that defendants engaged in "ongoing and harassing conduct" was not extreme and outrageous).

Plaintiff cannot establish Defendants actually caused any emotional distress. Per her own testimony, Plaintiff previously suffered from emotional distress from the alleged actions of the Chicago Police Department, abuse by her father, and abuse by several ex-husbands. Additionally, after Plaintiff received treatment at MacNeal hospital in October of 2010, she disregarded the hospital physician's orders by failing to obtain recommended treatment from certain prescribed mental health professionals.

Plaintiff fails to present any evidence to establish that Defendants' actions were the legal cause of any her injuries, including any exacerbation of a prior condition. First, due to the number of peculiar other incidents Plaintiff allegedly experienced, Plaintiff's own psychiatry expert could not render any opinion on caustion. Second, Dr Bank, Plaintiff's treating psychiatrist, did not offer any clear causation opinion at trial. Third, although Ms. Foster, a licensed clinical professional counselor offered a causation opinion, her testimony is insufficient to establish causation of a medical (DSM IV) diagnosis. Ms. Foster is neither a medical doctor

nor a psychologist. Thus, although Ms. Foster has sufficient qualifications to make a diagnosis, she is not qualified to offer an opinion on causation. Also, since she is only a counselor, and had not reviewed any medical records whatsoever, there is not a sufficient evidentiary foundation for her to offer such an opinion. As such, Plaintiff cannot establish the state law claim of intentional infliction of emotional distress against any Defendants as a matter of law.

### B. Plaintiff has not met her burden with respect to her disparate treatment/discrimination claims.

Counts I and II of DelGadillo's Complaint allege disparate treatment amounting to an equal protection violation under § 1983, and discrimination on the basis of race and national origin under § 1981[1]. Here, the evidence did not support that Kolin created an adverse employment action.

An employee can support an adverse employment action made for discriminatory reasons by "directly show[ing] that [racial/gender] discrimination motivated the employment decision, or, as is more common, [by relying] on the indirect burden-shifting method." *Sublett v. John Wiley & Sons*, 463 F.3d 731, 736-37 (7th Cir. 2006). Whether a plaintiff proceeds by direct or indirect method in proving discrimination, the plaintiff must show a materially adverse employment action. *Phelan v. Cook County*, 463 F.3d 773, 780 (7th Cir. 2006). At the outset, Plaintiff failed to present evidence that establishes she suffered an adverse employment action. An adverse employment action is a significant change in employment status. *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). The idea behind the requirement of proof of an adverse action "is simply that a statute that forbids employment discrimination is not intended to reach every bigoted act or gesture that a worker might experience in the workplace. *Phelan*, 463 F.3d at 780 citing *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 653 (7th Cir. 2000). An

---

[1] Brought pursuant to § 1983, per the Court's summary judgment ruling. [Dkt. 189]

adverse employment action can be termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits. *Moser v. Indiana Department of Corrections*, 406 F.3d 895, 904 (7th Cir. 2005). Adverse actions are typically economic injuries and result in tangible job consequences. *Whittaker v. Northern Illinois Univ.*, 424 F.3d 640, 647-648 (7th Cir. 2005).

Here, DelGadillo attempts to demonstrate an adverse action by claiming that her job responsibilities were taken away by Michael Piekarski and given to Olivia Pierkarski (previously Olivia Munoz). However, none of these actions apply to Kolin. For this reason alone, Kolin is entitled to judgment on these claims.

Significantly diminished material responsibilities may be considered an adverse action. *Moser*, 406 F.3d at 904. However, the action must involve more than a mere inconvenience or an alteration of job responsibilities. *Maclin v. SBC Ameritech*, 520 F.3d 781, 787 (7th Cir. 2008). To be exact, the Seventh Circuit has emphasized that an adverse action must "be 'significant' to be cognizable as discrimination." *Id*. Plaintiff has failed to present any evidence whatsoever to support that in fact material responsibilities and assignments were taken away by Kolin.

In *Maclin v. SBC Ameritech*, the employee sued her employer claiming she was demoted on the basis of disability, race and gender discrimination. 520 F.3d 781, 786 (7th Cir. 2008). The plaintiff worked for Ameritech and was promoted to a second-level management position. *Id*. at 784. Thereafter, the plaintiff accepted a demotion in lieu of being laid off, wherein she became first-level manager. *Id*. The plaintiff as a first-level manager was now one step below and had a lower salary range and smaller potential bonus. *Id*. The plaintiff was subsequently transferred to a new group known as Bid Central but remained a first-level manager. *Id*. She became team lead but the change in title had no effect on her salary or bonus potential. *Id*.

During the plaintiff's medical leave, the plaintiff's supervisor Gregory appointed Dave Gentilini, a white male, as interim team lead ultimately making him the permanent team lead. *Id*. at 785. The plaintiff was not assigned to the team lead role when she returned from her leave, instead her title was changed to complex bids manager. *Id*. She remained in the same salary and bonus range as she had before her leave. *Id*.

In analyzing the plaintiff's race and discrimination claims, the Seventh Circuit noted that a transfer involving no reduction in pay and no more than a minor change in working conditions does not qualify as an adverse employment action. *Id*. Regarding the change in title, the Court stated that an adverse employment action must involve a material, substantive change in an employee's pay and responsibilities. *Id*. at 789. "An employee has not suffered an adverse employment action if her title changes but her position remains the same in terms of responsibilities, salary, benefits and opportunities for promotion. Even a change in title that deprives an employee of prestige is insufficient if it lacks more substantive effect." *Id*.

In the case at hand, Plaintiff remained in a clerical position throughout the time she was employed at the Fire Department. She was hired as a clerk with clerical duties including as a receptionist and remained in that capacity. Joint ("Jt.") Exhibit 4. As in *Maclin*, Plaintiff has utterly failed to establish that any alleged change in duties, "had any significant or material effect on her job or opportunities for advancement." See also *Mercer v. Cook County, Illinois*, 527 Fed.Appx 515, 522-523 (12-2894 7th Cir. 2013)(in gender discrimination action, the plaintiff failed to establish reassignment to prior division constituted an adverse employment action where reassignment was not attended by any loss of salary or benefits and no evidence of substantially changed working conditions).

Even if DelGadillo could establish that there was a material reduction in her job responsibilities, the allegation falls short of establishing the requisite discriminatory intent. A plaintiff must demonstrate that the individual defendant acted (or failed to act) because of the plaintiff's protected class. See *Nabozny v. Podlesny,* 92 F.3d 446, 453 (7th Cir.1996). The plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Plaintiff must present direct evidence of discriminatory intent such as an admission or enough circumstantial evidence to allow a rational jury to infer that discriminatory intent motivated the employment action. *Burnell v. Gates Rubber Co.,* 647 F.3d 704, 708 (7th Cir. 2011). Circumstantial evidence may include suspicious timing; ambiguous statements; and behavior or comments directed at others in the protected class. *Id*.

Discriminatory intent is additionally refuted by the evidence in this case. "Discriminatory purpose implies more than intent as volition or intent as awareness of consequences. It implies that a decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing adverse effects on the identifiable group." *Deerwester v. Isham,* No. 94 C 1186, 1999 WL 160255 (N.D.Ill., March 9, 1999). Olivia Piekarski was allegedly given DelGadillo's duties. Mike Piekarski could not be deemed to have chosen the course of action "in part for the purpose" of adversely affecting Hispanic/Mexican women where Olivia herself is female, Hispanic and of Mexican descent. Clearly this is not discriminatory in nature.

Regardless, DelGadillo's alleged reduction in job duties is barred by the statute of limitations applicable to intentional employment discrimination claims. The statutes of limitations for claims under Sections 1983 and 1981 are borrowed from the forum state's statute of limitations for personal injury actions. *Jones v. R.R. Donnelley & Sons Co.,* 305 F.3d 717, 728

(7th Cir.2002) (section 1981); *Mitchell v. Donchin,* 286 F.3d 447, 450 n. 1 (7th Cir.2002) (section 1983). Thus, in Illinois, the statute of limitations is two years. *Jones,* 305 F.3d at 728; *Mitchell,* 286 F.3d at 450 n. 1. The limitations periods, while guaranteeing the protection of those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past. *Johnson* v. *Railway Express Agency, Inc.,* 421 U. S. 454, 463-464 (1975). DelGadillo filed her Complaint on October 17, 2011. Mike Piekarski was hired in 2005 and Olivia was hired in 2007. Thus, where both of these dates significantly pre-date 2009, any claims that DelGadillo's duties were removed from her and given to

The Court must therefore direct a verdict as to Count I and Count II in favor of Defendant Kolin.

## C. DelGadillo's sexual harassment/hostile work environment claims against Kolin fail as a matter of law.

Plaintiff offered no evidence that Defendant Kolin harassed or taunted Plaintiff because of her Hispanic heritage. Despite her plethora of allegations as expressed in her trial testimony and other evidence received at trial, there was no evidence of racial/ethnic harassment as part of Plaintiff's claim of a hostile workplace as alleged against Defendant Kolin.. Thus, Kolin is entitled to judgment on this claim.

Sexual harassment, may, in certain circumstances, constitute gender discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. *Trautvetter v. Quick,* 960 F.2d 1140 (7th Cir. 1990). Hostile work environment claims asserted under §1983 generally apply the same hostile work environment standard applied in Title VII Cases. *McPhaul v. Bd. Of Comm. of Madison County,* 226 F.3d 558, 567 (7th Cir. 2000). Under either cause of action, plaintiff must prove sexual harassment; however, unlike Title VII claims, §1983 claims require

plaintiff to establish that the defendants acted with "discriminatory intent." *Huff v. Sheahan*, 493 F.3d 893, 903 (7th Cir. 2007). In order to establish discriminatory intent, plaintiff must show that defendants intentionally and purposefully engaged in the misconduct alleged by plaintiff because of plaintiff's membership in a protected class. *Id.*[2] As such, Defendants' alleged comments and actions towards Delgadillo must be "because of" discrimination due to her status as a Hispanic female and not on factors merely personal to Delgadillo. *Id.*

To prevail on her hostile work environment claim, Delgadillo must establish that (1) she was continuously and repeatedly subjected to sexually offensive acts or statements based on her sex; (2) that Delgadillo unwelcomed such treatment (including acts or statements) and that she did not invite or solicit such treatment by her own acts or statements; (3) that such treatment resulted in a work environment that was permeated with discriminatory intent; (4) that the conduct was severe or pervasive so that it materially altered the conditions of Delgadillo's employment, and (5) that a reasonable person would find the workplace to be hostile. *Huff v. Sheahan*, 493 F.3d 893, 904 (7th Cir. 2007).

To prove a "hostile work environment" claim, the alleged harassment must be both subjectively and objectively so severe or pervasive as to alter the conditions of her employment and create an abusive working environment. *Whittaker v. Northern. Ill. Univ.*, 424 F. 3d 640, 644 (7th Cir. 2005). An objectively hostile environment requires that a reasonable person find the workplace hostile or abusive; as such, the Court must consider all of the circumstances, including the frequency of the discriminatory conduct, its severity, whether such conduct

---

[2] A claim of sexual harassment under the fourteenth amendment must show that the discrimination was intentional. "A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly...The decision maker must have selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group. *Trautvetter v. Quick*, 916 F.2d 1140 (7th Cir. 1990)(citing *Huebschen v. Dept. of Health and Social Serv.*, 716 F.2d 1167 (7th Cir. 1983).

includes threatening or humiliating behavior as opposed to mere offensive utterances; and whether it unreasonably interferes with an employee's work performance." *Hildebrandt v. IDNR,* 347 F.3d 1014, 1033 (7th Cir. 2003). Moreover, not all workplace conduct described as "harassment" affects a term, condition, or privilege of employment. *Id.*

First, this Court should note that Delgadillo offers absolutely no corroborating evidence of any sexual harassment by any individual defendant in this case. She bases her claims entirely on her own self-serving statements contained in her depositions. In reviewing similar discrimination claims, in the overwhelming majority of 7th Circuit opinions, including those cases granting summary judgment to the employer, the plaintiff offered some independent evidence of either an adverse action or actual harassment. (*See e.g. Zayas v. Rockford Memorial. Hosp.,* 740 F.3d 1154 (7th Cir. 2013); *Alexander v. Casino Queen, Inc.,* 739 F.3d 972 (7th Cir. 2013); *Johnson v. General Bd. Of Pension & Health Benefits of the United Methodist Church,* 733 F.3d 722 (7th Cir. 2013); *Morgan v. SVT, LLC,* 724 F.3d 990 (7th Cir. 2013); *Lambert v. Peri Formworks Sys.,* 723 F.3d 863 (7th Cir. 2013); *Hall v. City of Chi.,* 713 F.3d 325 (7th Cir. 2013); *Brown v. Advocate S. Suburban Hosp. & Advocate Health,* 700 F.3d 1101 (7th Cir. 2012)). In this case, Delgadillo relies entirely on her own testimony to establish her sexual harassment claims. However, her credibility has been severely impugned by objective evidence at trial refuting many of her allegations. More important, there is no actual evidence that Kolin actually acted with intent to harass Plaintiff sexually.

Nevertheless, even if this Court presumes Delgadillo's self-serving testimony is true, applying the required objectively reasonable standard, Delgadillo fails to produce sufficient evidence (1) that Kolin continuously and repeatedly subjected her to sexually offensive acts or statements, (2) that Kolin intentionally and purposefully engaged in any conduct because of

Delgadillo's status as a Hispanic female (as opposed to factors personal to her), and (3) that Kolin engaged in conduct so severe or pervasive that it materially altered the conditions of Delgadillo's employment. Because Delgadillo cannot establish all elements necessary to prevail on her hostile work environment/sexual harassment claims, her claims against Kolin fail as a matter of law.

In determining whether Kolin's conduct rises to the level of sufficiently "severe or pervasive" the Court looks at the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interfered with Delgadillo's work environment. *Murray v. CTA*, 252 F.3d 880 (7th Cir. 2001). Not all workplace conduct that may be described as "harassment" affects a term, condition, or privilege of employment. *Hildebrandt v. IDNR*, 347 F.3d 1014, 1033 (7th Cir. 2003).

In *Whittaker v. NIU*, the 7th Circuit held as a matter of law that plaintiff failed to proffer sufficient evidence in support of her hostile work environment claim where defendant twice invited the plaintiff to join him for a "weekend of fishing and other things" on his boat and called her derogatory names such as "bitch," "dumb blond," "stupid cunt," "fucking slut," "fucking lazy bitch" and "goddamnn whore." 424 F.3d 640 (7th Cir. 2005). In granting summary judgment in favor of defendant, the Court recognized that the defendants made the comments outside of the plaintiff's presence and more importantly noted that defendant's invitation was relatively isolated and alone not actionable. *Id.* at 646. Specifically, the court noted "[i]t is well settled that relatively isolated instances of non-severe misconduct will not support a claim of a hostile work environment." *Id.* at 644 (citing *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir. 1993)). The Court further noted that the plaintiff's failure to criticize the defendant for

sexually harassing while actually employed undercut her hostile work environment claim. *Id.* at 646.

In *Weiss v. Coca-Cola Bottling Co,* the defendant allegedly asked the plaintiff for dates, called her a 'dumb blond,' put his hand on her shoulder several times, placed 'I love you ' signs in her work area and attempted to kiss her in a bar," and "may have twice attempted to kiss her in the office." The 7th Circuit found such relatively isolated incidents failed to meet the standard for actionable sexual harassment. 990 F.2d 333, 337 (7th Cir.1993). Similarly, in *Baskerville v. Cullingan Int'l Co.,* the record continued evidence that over the course of 7 months defendant called plaintiff a "pretty girl;" made grunting noises as she left his office wearing a leather skirt; told her that his office did not get "hot" until she stepped into it; joked that "all pretty girls should run around naked in the office," likened her to Anita Hill in acknowledging his tendency to share comments of a sexual nature with her at the office; and once made gestures suggesting masturbation while conversing. 50 F.3d 428, 430 (7th Cir. 1995). Despite evidence of such "vulgar," "coarse, and "boorish" behavior, the 7th Circuit overturned a jury verdict in the plaintiff's favor, noting that "[a] handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage." *Id.* at 431. The Court further stated: "[t]he concept of sexual harassment is designed to protect working women from the kind of male attentions that can make the workplace hellish for women. It is not designed to purge the workplace of vulgarity." *Id.* at 428. *See also Kampmier v. Emeritus Corp.,* 472 F.3d 930, 941 (7th Cir. 2007) ("occasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers generally does not create a work environment that a reasonable person would find intolerable); *Coffman v. Indianapolis Fire Dept.,* 578 F.3d 559 (7th Cir. 2009) (workplace harassment not severe and pervasive).

**D. No punitive damages are warranted against Kolin.**

Finally, even were any of DelGadillo's claims sufficient, there is no basis whatsoever to submit to the jury any potential punitive damages award against Kolin. A jury may award punitive damages in a 42 U.S.C. § 1983 claim if it finds "conduct motivated by evil intent or involving reckless or callous indifference to the federally-protected rights of others." *Erwin v. Cty. of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir. 1989). A plaintiff may satisfy this standard by establishing that "defendant actually derive[d] satisfaction from hurting the plaintiff," or, "while not having any particular desire to hurt the plaintiff, trample[d] on the plaintiff's rights in a fashion that can fairly be called reckless, to accomplish his own aims." *Soderbeck v. Burnett Cty., Wis.*, 752 F.2d 285, 289 (7th Cir. 1985). In the context of punitive damages under § 1983, there is a distinction between deliberate misconduct and reckless misconduct. *Id.* at 290.

Here, DelGadillo presented absolutely no evidence that any even conceivably culpable act of Kolin could fall into the former category. Accordingly, the Court should enter a directed finding with respect to DelGadillo's claim for punitive damages as to Kolin.

**III. CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendant Ted Kolin moves that this Honorable Court enter judgment as a matter of law in his favor pursuant to Fed. R. Civ. P. 50(a), and for any and all such other relief as is equitable and just.

Respectfully submitted,

Date: March 21, 2016          s/s Brian W. Carey
                              Brian W. Carey

Attorney for Defendant Kolin


Brian W. Carey
1807 N Broadway
Melrose Park, IL  60160
708-343-8381
brian.w.carey17@gmail.com